

**DOUGLAS McINNIS**
*Admitted in Massachusetts*
DMCINNIS@SMITHBRINK.COM

# SMITH & BRINK, P.C.

ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
WWW.SMITHBRINK.COM

**BRAINTREE**
350 GRANITE STREET
SUITE 2303
BRAINTREE, MA  02184
TEL: (617) 770-2214
FAX: (617) 774-1714

March 6, 2013

**VIA IN-HAND DELIVERY**
Civil Clerk's Office
Suffolk Superior Court
3 Pemberton Square
Boston, MA 02108

Re:     *Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company v. Dorchester Chiropractic, Inc., Gerard Blackwood, D.C., and Eric Lustgarten, D.C.*
Suffolk Superior Court, C.A. No.: SUCV2012-03729
**Our File No.:        1350-0567**

Dear Sir/Madam:

Enclosed please find for filing and docketing Plaintiffs, Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company's **Amended Complaint** in connection with the above-referenced matter.

Should you have any questions, please do not hesitate to contact me.  Thank you for your attention to these matters.

Very truly yours,

Douglas McInnis, Esq.

Attorney for the Plaintiffs,
Government Employees Insurance Company,
GEICO General Insurance Company, and
GEICO Indemnity Company

DM/kmc
Enclosures

---

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. _____ |
|---|---|---|
| | COUNTY OF  SUFFOLK | |

| PLAINTIFF(S) | Government Employees Insurance Company, GEICO General Insurance Company, & GEICO Indemnity Company | DEFENDANT(S) | Dorchester Chiropractic, Inc., Gerard Blackwood, D.C., and Eric Lustgarten, D.C. |
|---|---|---|---|

| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| David O. Brink, Esq., Smith & Brink, P.C., 350 Granite St, Suite 2303, Braintree, MA 02184; (617) 770-2214; BBO# 547370 Shahan J. Kapitanyan, Esq., Smith & Brink, P.C., 350 Granite St, Suite 2303, Braintree, MA 02184; (617) 770-2214; BBO# 654055 | |

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| E99 Misc Other (specify) - X track | | | ⊙ ] Yes   ○ ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
1. Total hospital expenses ............................................................ $_____
2. Total doctor expenses ............................................................. $_____
3. Total chiropractic expenses ....................................................... $_____
4. Total physical therapy expenses .................................................. $_____
5. Total other expenses (describe) ........................... Subtotal  $_____

B.   Documented lost wages and compensation to date ...................... $_____
C.   Documented property damages to date ....................................... $_____
D.   Reasonably anticipated future medical expenses .......................... $_____
E.   Reasonably anticipated lost wages and compensation to date ......... $_____
F.   Other documented items of damages (describe)
                                                                                                        $_____

G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                   Total $_____

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

| Plaintiffs allege an intentional fraudulent medical billing scheme against the Defendants, and request monetary and injunctive relief pursuant to 18 U.S.C. s. 1962, M.G.L. ch. 93A, and common law claims, inter alia, fraud, civil conspiracy, and Declaratory Judgment. | TOTAL   $1,136,271. |
|---|---|

**PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT**

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   Date: 10/11/12

A.O.S.C. 3-2007

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUFFOLK SUPERIOR COURT
                                               Civil Action No.: SUCV2012-03729

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO GENERAL INSURANCE
COMPANY, AND GEICO INDEMNITY
COMPANY,

          Plaintiffs,

vs.

DORCHESTER CHIROPRACTIC, INC.,
GERARD BLACKWOOD, D.C., AND
ERIC LUSTGARTEN, D.C.,

          Defendants.

## AMENDED COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE RELIEF

## TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................1

II.  THE PARTIES.................................................................................3

III.  JURISDICTION AND VENUE.................................................................4

IV.  THE DEFENDANTS HAVE BREACHED G.L. c. 93A, §11 BY VIOLATING
THEIR OBLIGATIONS UNDER MASSACHUSETTS REGULATORY SCHEME
RELATING TO PERSONAL INJURY PROTECTION BENEFITS AND THE
PRACTICE OF CHIROPRACTIC TREATMENT.........................................4

    A.  MASSACHUSETTS' PIP SYSTEM ...............................................4
    B.
    C.  MASSACHUSETTS CHIROPRACTIC STATE LAWS AND
        REGULATORY SYSTEM.................................................6

V.  PLAINTIFFS' FACTUAL ALLEGATIONS...............................................9

    A.  THE DEFENDANTS CREATED FRAUDULENT CHIROPRACTIC
        MEDICAL RECORDS AND BILLS IN VIOLATION OF STATE
        LAWS AND REGULATIONS.................................................10

        i.  THE DEFENDANTS CREATED MEDICAL RECORDS
            WHICH WERE INTENTIALLY INACCURATE OR
            INCOMPLETE.................................................11

        ii.  THE DEFENDANTS HAVE BEEN PREVIOUSLY DESCIPLINED
            FOR CREATING INACCURATE AND INCOMPLETE MEDICAL
            RECORDS.................................................15

        iii.  THE DEFENDANTS TREATED PATIENTS WITH A
            PREPROGRAMMED TREATMENT
            REGIMEN.................................................16

        iv.  THE DEFENDANTS BILLED GEICO FOR TREATMENT THAT
            WAS EXAGGERATED AND/OR NOT RENDERED.................19

        v.  THE DEFENDANTS BILLED GEICO UTILIZING THE
            HEALTH INSURANCE CMS-1500 CLAIM FORM, THEREBY
            ADOPTING THE LANGUAGE CONTAINED
            THEREIN.................................................23

        vi.      ADDITIONAL CLAIMS AND EVIDENCE THAT THE
                    DEFENDANTS ENGAGED IN A PATTERN OF FRAUDULENT
                    ACTIVITY IN FURTHERANCE OF A RICO ENTERPRISE........28

B.      ACTS OF MAIL AND WIRE FRAUD............................................32

VI.    DAMAGES....................................................................................34

VII.   CAUSES OF ACTION....................................................................34

A.      FEDERAL CAUSES OF ACTION...............................................34

B.   STATE LAW CAUSES OF ACTION..................................................43

VIII.  JURY DEMAND............................................................................53

## I.     **INTRODUCTION**

1.      The Defendants, Dorchester Chiropractic, Inc. (hereinafter "Dorchester Chiropractic", Gerard Blackwood, D.C. and Eric Lustgarten, D.C. (hereinafter "licensees"), actively engaged in conspiracies to defraud the Plaintiffs, Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (hereinafter "GEICO") and other insurance companies to pay unwarranted monies to Personal Injury Protection (hereinafter "PIP") bodily injury claims, by paying cash kickbacks to runners and patients of Dorchester Chiropractic and by creating fraudulent medical records and bills for treatment allegedly rendered at Dorchester Chiropractic.

2.      The insurance fraud conspiracies illustrated below were initiated, promoted, financed, operated, and maintained by the Defendants.

3.      Using the U.S. Mail and interstate telephone wires, the Defendants advanced their scheme to defraud GEICO by submitting false medical and chiropractic records, reports and bills to GEICO.

4.      The Defendants undertook precautions to ensure that the true nature of their insurance fraud conspiracy operated in a fashion that would avoid detection by GEICO.

5.      GEICO justifiably and detrimentally relied upon the Defendants' false documentation as reasonable proof of the fact and amount of loss incurred by Dorchester Chiropractic's patients, thus causing GEICO to believe that its contractual obligations under M.G.L. c. 90, § 34M and the GEICO Massachusetts Automobile Insurance Policy had been triggered.

6.      GEICO has paid at least **$136,271.60** dollars in connection with bills submitted by the Defendants.

7.     The Defendants had actual knowledge that their activities were causing GEICO pecuniary loss and constituted intentional:

        a.     Violations of Massachusetts laws and regulations governing the practice of chiropractic care; and,

        b.     Unfair and deceptive business practices.

8.     As a result of the Defendants' fraudulent conduct set forth below, GEICO seeks compensatory damages arising from:

        a.     Payments made by GEICO to the Defendants based upon fraudulent medical bills and records;

        b.     Insurance proceeds paid in connection with any bodily injury claims that were made in reliance on the Defendants' fraudulent documentation; and,

        c.     Expenses incurred by GEICO that were caused by Defendants' insurance fraud scheme.

9.     GEICO seeks to recover treble damages against the Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act for violations of 18 U.S.C. § 1961 et seq.

10.     Pursuant to M.G.L. c. 93A, § 11, GEICO seeks to recover treble the damages it has sustained as a result of the Defendants' intentional unfair and deceptive business practices.

11.     Under Massachusetts common law, GEICO pleads causes of action for fraud, civil conspiracy, intentional interference with contractual relations, and intentional interference with advantageous business relations.

12.     GEICO also seeks equitable relief in the form of a declaratory judgment, unjust enrichment and injunctive relief sufficient to maintain the status quo, and to cease and/or diminish the threat of continued racketeering activities by the Defendants.

## II.     THE PARTIES

13.     The three GEICO companies named as Plaintiffs herein operate in a common claims function, and that common claims department handles claims for both companies, including the claims at issue in this suit.  Although each Plaintiff would have a separate cause of action against each named Defendant, due to the commonalities of the claims and the standard operating procedures of the Plaintiffs, as well as the interest of judicial economy, the Plaintiffs have joined together to bring this action.

14.     Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company, are duly organized automobile insurers authorized to transact business in the Commonwealth of Massachusetts.

15.     Dorchester Chiropractic is a Massachusetts corporation with a principal place of business at 1504-B Dorchester Avenue, Dorchester, Suffolk County, Massachusetts.

16.     Gerard Blackwood, D.C. ("Blackwood") is a natural person residing at 22 Old Sudbury Road, Lincoln, Middlesex County, Massachusetts.

17.     On June 20, 1990, Blackwood, was issued a chiropractor's license, No. 1561, by the Massachusetts Board of Registration of Chiropractors Massachusetts Board of Chiropractors (hereinafter "MBC").

18.     On May 14, 1996, Articles of Organization filed with the Massachusetts Secretary of State, Division of Corporations, listed Blackwood as President, Treasurer, Secretary, the sole Director and Registered Agent of Dorchester Chiropractic, Inc.

19.     On or about October 13, 2005, Blackwood was issued a facility license, No. 193, by the MBC for Dorchester Chiropractic.

20.     Eric Lustgarten, D.C. ("Lustgarten") is a natural person residing at 174 Harding Terrace, Dedham, Norfolk County, Massachusetts.

21.     On July 7, 1989, Lustgarten was issued a chiropractor's license, No. 1429, by the MBC.

22.     At all times relevant, Lustgarten worked at Dorchester Chiropractic as a chiropractor.

**III.     JURISDICTION AND VENUE**

23.     Jurisdiction over the Federal causes of action is conferred upon this Court by 18 U.S.C. §§ 1961 – 1964, as well as, decisional law conferring concurrent jurisdiction upon state courts for civil RICO claims.

24.     Jurisdiction over the state law causes of action is conferred upon this Court by various Massachusetts statutes and rules, including but not limited to M.G.L. c. 93A, §§ 2 and 11.

25.     The vast majority of the wrongful acts known to GEICO as alleged herein were carried out within Suffolk County and the Commonwealth of Massachusetts.  Venue is therefore proper in Suffolk County.

**IV.     THE DEFENDANTS HAVE BREACHED G.L. c. 93A, §11 BY VIOLATING THEIR OBLIGATIONS UNDER MASSACHUSETTS REGULATORY SCHEME RELATING TO PERSONAL INJURY PROTECTION BENEFITS AND THE PRACTICE OF CHIROPRACTIC TREATMENT**

**A.     MASSACHUSETTS' PIP SYSTEM**

26.     GEICO is in the business of writing insurance and paying legitimate claims in Massachusetts.

27.     Pursuant to the Massachusetts No Fault Personal Injury Protection Statute, M.G.L. c. 90, § 34M, every owner or registrant of a motor vehicle, required to be registered and licensed in Massachusetts, is required to carry PIP insurance, which pays reasonable and necessary medical expenses, incurred for legitimate accident-related injuries regardless of fault. As a general matter, the PIP dollar limit for claimants with health insurance is two thousand ($2,000.00) dollars. If the claimant has no health insurance, then the PIP limit is eight thousand ($8,000.00) dollars.

28.     The public policy goal behind this requirement is to assure that all drivers and their passengers are minimally covered for legitimate injuries suffered as a result of a motor vehicle accident.

29.     PIP benefits relieve taxpayers from shouldering the burden of caring for injured drivers and passengers, who might not have health insurance.

30.     Pursuant to M.G.L. c. 90, § 34M, legitimate PIP benefits are to be paid within 10 days following receipt of written notice of a medical invoice.

31.     Dorchester Chiropractic represents that it is a health care provider that bills for legitimate treatment reportedly provided to individuals covered under Massachusetts' No Fault Personal Injury Protection Statute. In exchange for its services, Dorchester Chiropractic accepts Assignments of Benefits from patients covered under the PIP statute and submits claims for payment to insurance carriers, including GEICO.

32.     Dorchester Chiropractic, conspiring with its licensees, intentionally and fraudulently billed no-fault insurance carriers, including GEICO, for services that were excessive and not medically necessary.

**B.** **MASSACHUSETTS CHIROPRACTIC STATE LAWS AND REGULATORY SYSTEM**

33.     Pursuant to M.G.L. c. 122, § 94A(b), the MBC promulgated "regulations necessary to ensure the safe and lawful practice of chiropractic" in the Commonwealth of Massachusetts. The MBC promulgated 233 CMR 4.00-4.15, attached as **Exhibit 1** that outlines specific prohibitions which apply to chiropractors and the chiropractic practice.

34.     In the balance of this Complaint, GEICO catalogues how Dorchester Chiropractic's licensees violated the following Code of Massachusetts Regulations:

35.     Pursuant to 233 CMR 4.05(1):

> A chiropractor shall establish and maintain a separate, adequate and accurate written clinical record for each patient in his or her care. The record shall be kept in chronological order and recorded entries shall be made contemporaneously. Each such entry shall be signed by, or shall otherwise adequately identify the registered chiropractor who is treating the patient to whom the record pertains. Such record shall be legible and self-explanatory. The record shall include at a minimum, documentation of the following:
>
> a.    The patient's case history;
>
> b.    Finding of all examinations performed;
>
> c.    Findings of special duties, including but not limited to x-ray studies taken or reviewed;
>
> d.    Clinical impression;
>
> e.    Treatment plans;
>
> f.    Informed consent;
>
> g.    Progress notes for each patient encounter (Subject and Objective Assessment and Plan format, data assessment and plan format or similar work chart notes); and,
>
> h.    Details of supportive procedures or therapies, when administered, dispensed or prescribed.

36.     Pursuant to 233 CMR 4.08(2):

> A chiropractor who provides excessive treatment or issues bills to a patient for the purpose of enabling the patient to incur medical treatment expenses in excess of the tort threshold established pursuant to M.G.L. c. 231, §6D shall be subject to disciplinary action by the MBC. Such excessive treatment or excessive billing shall constitute "deceit" and "gross misconduct in the practice of the profession" within the meaning of M.G.L. c. 112, § 61 and unprofessional conduct within the meaning of M.G.L. c. 112, § 93.

37.     Pursuant to 233 CMR 4.08(3) "excessive treatment" for the purposes of CMR 4.08, shall include but not be limited to:

> a.     Treatment which exceeds, in quality or amount, the documented and clinically reasonable chiropractic needs of the patient;
>
> b.     Treatment which is unrelated to the diagnosis or reasonably suspected, injury or condition incurred by the patient; or,
>
> c.     Treatment which is provided solely for the purposes of enabling the patient to incur medical treatment expenses in excess of the tort threshold established by M.G.L. c. 231, §6D.

38.     Pursuant to 233 CMR 4.08(4) excessive billing "shall include but not be limited to, ***bills for services which are not performed and/or bills which overstate the time spent evaluating or treating the patient***." (Emphasis added.)

39.     Pursuant to 233 CMR 4.09(1):

> Improper charges shall constitute a form of "deceit" and "gross misconduct in the practice of the profession", within the meaning of M.G.L. c. 112, § 61, and a form of "unprofessional conduct" within the meaning of M.G.L c. 112, § 93. Pursuant to 233 CMR 4.09(3), the following charges shall be considered improper charges:
>
> a.     Charges for over utilization of practice as defined in 233 CMR 4.08;

     b.     Charges for adjustment/manipulation which are not based on currently accepted procedure codes;

     c.     Charges which are based on the level of coding which are not consistent with patient's clinical history, the subjective and objective clinical findings concerning the patient which were made at the time of the visit, the complexity of the clinical decision making involved in the diagnosis and/or of the patient, or the nature and care provided to that patient;

     d.     Charges for treatments, procedures or services which were not rendered, were not fully rendered, or not rendered as represented by the charging chiropractor…

40.     Pursuant to 233 CMR 4.11(1):

The MBC may take disciplinary action against a registered chiropractor or a chiropractic facility pursuant to 233 CMR 4.06, if the registered chiropractor or any agent or employee of the registered chiropractor or the chiropractic facility makes any false statement or misrepresentation of material fact in connection with any application or claim for payment of any health care benefit.

41.     Pursuant to 233 CMR 4.11(2):

[M]aking a false statement or misrepresentation of material fact in connection with any application or claim for payment in any health care benefit includes, but is not limited to the following:

     a.     Making or causing to be made any false statement or misrepresentation of a material fact in any application for payment for a health care benefit;

     b.     Presenting, or causing the presentation of, any application for health care benefit which contains any false statement or misrepresentation of material fact;

     c.     Making, or causing the making of any false statement or misrepresentation of a material fact for use in determining a patient's entitlement to any health care benefit, including whether particular goods or services were medically necessary in accordance with accepted standards of chiropractic practices; or,

d.   Concealing, or failing to disclose, the occurrence of an event which    effects the patient's initial or continued right to any health care benefits for the purpose of enabling the patient to fraudulently secure that health care benefit either in a greater amount that is due or when no such benefit is due.

42.   Pursuant to 233 CMR 4.11(3) "A statement made in connection with an application or claim *for payment of a health care benefit is false, within the meaning of 233 CMR 4.11, if it is wholly or partially false, fictitious, fraudulent, untrue or deceptive*."

(Emphasis added.)

43.   Pursuant to 233 CMR 4.12 (3):

No licensed chiropractor or agent, servant or employee of a licensed chiropractor or of a chiropractic facility shall offer or pay any remuneration, including any bribe or *rebate*, directly or indirectly, overtly or covertly, *in cash or in kind*, for the purpose of inducing any person to purchase, lease, order, or arrange for any product, facility, service or item related directly or indirectly to Chiropractic care, treatment or services.

(Emphasis added.)

44.   As set forth below, the Defendants intentionally conspired to violate, and did violate, the above-captioned laws.

## V.   **PLAINTIFFS' FACTUAL ALLEGATIONS**

45.   Dorchester Chiropractic, and its licensees, together with others, successfully executed their fraudulent scheme through Dorchester Chiropractic, which they created, operated, and/or controlled.

46.   All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

A.    **THE DEFENDANTS' CREATED FRAUDULENT CHIROPRACTIC MEDICAL RECORDS AND BILLS IN VIOLATION OF STATE LAWS AND REGULATIONS**

47.    The Defendants engaged in a systematic pattern and practice of creating fraudulent medical records and invoices which were submitted to GEICO.

48.    There are forty-eight (48) reported motor vehicles accidents at issue in this case and seventy-two (72) claimants, who allegedly sought treatment at Dorchester Chiropractic from December of 2008 until January of 2012.  Dorchester Chiropractic continues to operate as of the date of this Complaint.

49.    Medical records and invoices created and mailed to Plaintiffs by Dorchester Chiropractic under the direction, supervision and control of Dorchester Chiropractic's licensees, was created in connection with the forty-eight (48) reported motor vehicle accidents at issue and share some of the following common characteristics:

a.    Of the forty-eight (48) reported motor vehicle accidents at issue in this case, there were only twenty-five (25) occasions where law enforcement actually responded to the reported accidents (**Exhibit 2**, **Tab A-Y**).  Of those twenty-five (25) occasions, thirteen (13) of the Police Reports documenting the reported accident specified that either there were no injuries or that emergency medical treatment was declined by the claimant(s).  (See Police Reports attached hereto as **Exhibit 2, Tab C, D, G, I, K, P, Q, R, S, T, U, X, and Y**);

b.    Almost all of the claimants received the same treatment regimine, which lacked individual clinical decision-making, regardless of patient variables, such as age, gender, or the severity of accident; and,

d.   The claimants complained only of soft tissue injury.

i.   **THE DEFENDANTS' CREATED MEDICAL RECORDS WHICH WERE INTENTIONALLY INACCURATE AND/OR INCOMPLETE**

50.   Dorchester Chiropractic and its licensees created inaccurate and incomplete medical records by misrepresenting that established patients were new patients.

51.   This pattern of deceptive conduct, engaged in by Defendants, described in further detail below, is best demonstrated by analyzing known examples of claims wherein the claimant is, in fact, a returning and/or established patient of Dorchester Chiropractic.

**DOL:**            5/8/10 and 1/30/11
**Claimant:**       R. A.
**GEICO Claim No.:** 0386538110101014 and 0386538110101022

52.   R.A. was involved in a reported motor vehicle accident on January 30, 2011 ("2011 accident").  Although the Police Report documenting the accident indicated that none of the parties in the vehicle sustained any injuries, (*see* **Exhibit 2, Tab I**) R.A. presented at Dorchester Chiropractic eight (8) days later for treatment, and subsequently filed a PIP claim with GEICO.

53.   As stated above, 233 CMR 4.05 requires medical records to be accurate, complete, chronological, contemporaneously generated and provide immediate documentation of the patient/doctor encounter.  Additionally, the records should adequately record the purpose, medical history of the patient, diagnosis/impressions, recommendations, prognosis, response and conclusions of the encounters of each date of service.

54.   Here, however, Dorchester Chiropractic did not accurately report R.A.'s prior medical history as it omitted the fact that R.A. was involved in at least one (1) prior motor

11

vehicle accident. The prior accident occurred only seven (7) months before R.A.'s 2011

accident, on May 8, 2010 ("2010 accident").

55.     In addition, Dorchester Chiropractic improperly billed GEICO under the

American Medical Association's ("AMA") Current Procedure Terminology Codes ("CPT

codes").

56.     CPT codes are a listing of descriptive terms and identifying codes for

reporting medical services and procedures performed by physicians and other health care

professionals.

57.     Dorchester Chiropractic utilizes the CPT codes for billing purposes.

58.     Following R.A.'s 2010 accident, he was evaluated at Dorchester Chiropractic,

and was subsequently billed for that alleged service under CPT code 99213 at a rate of

$100.00 dollars (*see* **Exhibit 12, Tab D**).

59.     CPT code 99213 is used to report the evaluation of services provided by a

chiropractor to an ***established patient***. Pursuant to the CPT codes, to qualify as an

established patient, the patient must have received treatment from the billing chiropractor or

another chiropractor from the billing chiropractor's group "within three years."

60.     By the fact that Dorchester Chiropractic billed R.A. under 99213 in 2010,

demonstrates that R.A. had previously treated at Dorchester Chiropractic sometime between

2007 and the 2010 accident. Moreover, this prior treatment was also omitted from R.A.'s

2010 and 2011 medical records.

61.     Lastly, following R.A.'s reported 2011 accident, R.A. was again evaluated at

Dorchester Chiropractic. However, following R.A.'s 2011 evaluation, Dorchester

Chiropractic billed him under CPT code 99203, at a higher rate of $175 dollars (*see* **Exhibit 12, Tab E**).

62.     CPT code 99203 is used to report the evaluation of services provided by a chiropractor to a ***new patient***.  R.A. was not a new patient.  In fact, R.A. had just completed treatment for his 2010 accident on September 27, 2010, (*see* **Exhibit 12, Tab E**) approximately four (4) months earlier.

63.     By invoicing R.A. as a new patient, under CPT code 99203, Dorchester Chiropractic violated Massachusetts chiropractic requirements, created a false record, and received more money than it was entitled to obtain.

> **DOL:**            **5/12/11**
> **Claimant:**        **C.R.**
> **GEICO Claim No.:   0408252730101024**

64.     On May 12, 2011, C.R. was reportedly involved in a motor vehicle accident ("2011 accident").  Following the 2011 accident, C.R. presented for treatment at Dorchester Chiropractic and subsequently filed a PIP claim with GEICO.   As part of an investigation, GECIO requested C.R. appear for an EUO.

65.     During her EUO on October 24, 2011, C.R. testified that she had been involved in a prior motor vehicle accident.  As a result of this prior accident, C.R. had sought treatment at Dorchester Chiropractic. (**Exhibit E**, p 28**).**

66.     Nevertheless, C.R.'s medical records from Dorchester Chiropractic documenting treatment related to the 2011 accident, omitted the fact that C.R. was involved in a prior motor vehicle accident wherein she treated at Dorchester Chiropractic.

67.     Dorchester Chiropractic was fully aware that C.R. was an established patient as it billed C.R. under CPT code 99213, but chose to omit it from the record (*See* **Exhibit 12,**

**Tab F).** By omitting the prior accident from C.R.'s records, the Defendants violated

Massachusetts Chiropractic regulations, and created a false record.

| | |
|---|---|
| **DOL:** | **8/21/10** |
| **Claimants:** | **S.C.** |
| **GEICO Claim No.:** | **0388699640101037** |

68.     On August 21, 2010, S.C. was involved in a motor vehicle accident.

Following her accident S.C. presented for medical treatment at Dorchester Chiropractic, and

subsequently filed a PIP claim with GEICO.  As part of an investigation into the claim,

GECIO requested S.C. appear for a EUO.

69.     On December 20, 2010, S.C. appeared for her EUO, and testified she had

previously treated at Dorchester Chiropractic as a result of being involved in two prior motor

vehicle accidents (*see* **Exhibit 4,** pps 10-11).

70.     However, S.C.'s medical records from Dorchester Chiropractic, documenting

S.C.'s 2010 accident, omitted the fact that S.C. was involved in two prior accidents wherein

she treated at Dorchester Chiropractic.

71.     The above-referenced claims demonstrate a deliberate misleading and

misrepresentation of facts by the Defendants.

72.     By concealing, or intentionally failing to disclose, the occurrence of an event,

such as a prior injury requiring chiropractic treatment, the Defendants violated 233 CMR

4.05, which requires Dorchester Chiropractic to maintain accurate written clinical records.

73.     By concealing, or intentionally failing to disclose, the occurrence of an event,

such as a prior injury requiring chiropractic treatment, Dorchester Chiropractic affected the

claimants' initial or continued right to insurance benefits for the purpose of enabling the

claimants' to fraudulently secure that insurance benefit either in greater amount than is due or when no such benefit is due, in direct violation of 233 CMR. 4.11(d).

ii.   **THE DEFENDANTS HAVE BEEN PREVIOUSLY DISCIPLINED FOR CREATING INACCURATE AND INCOMPLETE MEDICAL RECORDS**

74.   Public records memorialize that the Defendants, Dorchester Chiropractic, Blackwood and Lustgarten, have been disciplined by the MBC for failing to maintain adequate and accurate written treatment records pursuant to 233 CMR. 4.05.

75.   On August 3, 2010, in lieu of proceeding with a full adjudicatory hearing before the MBC, Blackwood executed a Consent Agreement concerning In the Matter of Gerard Blackwood, CH License No. 1561, Docket No. CH-08-043, attached as **Exhibit 5**, and fully incorporated herein by reference.

76.   By executing the Consent Agreement, Blackwood admitted that in the event an adjudicatory hearing were to proceed, the MBC would have found that he violated provisions set forth in 233 CMR 4.05.

77.   By executing the Consent Agreement, (*see* **Exhibit 5**), Blackwood acknowledged that his conduct warranted disciplinary action by the MBC.  Pursuant to the Consent Agreement, Blackwood agreed to nine (9) months of probation, twelve (12) hours of continuing education, and employ of another licensed Massachusetts chiropractor who was willing to serve as the Licensee's Clinical and Administrative Monitor during the probationary period.

78.   On August 3, 2010, in lieu of proceeding with a full adjudicatory hearing before the MBC, Lustgarten also executed a Consent Agreement, In the Matter of Eric Lustgarten, CH License No. 1429, Docket No. CH-08-044, attached as **Exhibit 6**, and fully

incorporated herein by reference. By executing the Consent Agreement, Lustgarten admitted that in the event an adjudicatory hearing were to proceed, the MBC would have found that he violated provisions set forth in 233 CMR 4.05.

79.     Pursuant to the Consent Agreement, (*see* **Exhibit 6**), Lustgarten agreed to six (6) months of probation, twelve (12) hours of continuing education, and further agreed to employ another licensed Massachusetts chiropractor who was willing to serve as the Licensee's Clinical and Administrative Monitor during the probationary period.

80.     On August 23, 2010, in lieu of proceeding with a full adjudicatory hearing before the MBC, Dorchester Chiropractic executed a Consent Agreement concerning In the Matter of Dorchester Chiropractic, CH License No. CF-193, Docket No. CH-08-031.

81.     As a result, Dorchester Chiropractic agreed to a twelve (12) month probationary period, to submit to a compliance audit and assessment conducted by another licensed Massachusetts chiropractor, and further agreed to employ another licensed Massachusetts chiropractor who was willing to serve as the Clinical and Administrative Monitor during the probationary period.  A true and accurate copy of this Consent Agreement is attached as **Exhibit 7**, and is fully incorporated herein by reference.

### iii.     THE DEFENDANTS TREATED PATIENTS WITH A PREPROGRAMMED TREATMENT REGIMEN

82.     An expert review of all medical records and invoices at issue in this matter has demonstrated that Dorchester Chiropractic and its licensees intentionally:

   a.     Created and submitted inaccurate, inadequate and inappropriate documentation to GEICO.

b.    Submitted documentation to GEICO which exaggerated the nature and extent of patients' injuries creating false justification for unnecessary medical care for pecuniary gain.

c.    Rendered treatment which exceeds the type, quality and/or amount of the documented and clinically reasonable chiropractic needs of the patient.

d.    Rendered a recipe of treatment absent any individualized medical decision making.

e.    Rendered treatment which is unrelated to the diagnosed, or reasonably suspected, injury or condition incurred by the patient.

f.    Rendered treatment which is provided for the purpose of enabling the patient to incur medical treatment expenses in excess of the tort threshold established by M.G.L. c. 231, § 6D.

g.    Failed to establish and maintain a separate, adequate and accurate written clinical record for each patient.

h.    Submitted invoices to GEICO containing charges that amount to overutilization of practice.

i.    Submitted treatment notes and invoices to GEICO containing charges for excessive and improper use of supportive procedures and therapies.

j.    Created false and misleading reports, and submitted those reports to GEICO.

k.    Submitted documentation to GEICO which evidenced a recipe of treatment which was preordained, non-specific, devoid of any rationale or clinical

decision making, and/or unjustified, based on the examinations, diagnoses, treatments resulting in unnecessary risk of adverse impact on the patient.

83.     The chart annexed hereto as **Exhibit 8**, and incorporated by reference herein as if set forth in its entirety, details the specific nature of the misrepresentation(s) and/or other fraudulent content advanced by or on behalf of the defendants with respect to each particular claim (and associated chiropractor(s)) identified in the Complaint.

84.     This aforementioned fraudulent activity is best demonstrated by reviewing the following exemplar claims, involving two claimants from the same accident, who received identical treatment at Dorchester Chiropractic.

**DOL:**              **11/1/09**
**Claimant:**         **M.E. and M.C.**
**GEICO Claim No.:**  **0379119640101011**

85.     On November 1, 2009, M.E., a sixty-two year old woman, and M.C., a twenty-eight-year-old woman, were involved in a reported motor vehicle accident. Following the accident, both M.E and M.C presented at Dorchester Chiropractic for treatment and subsequently filed PIP claims with GEICO.

86.     M.E. allegedly began her treatment at Dorchester Chiropractic on November 2, 2009. After treating there for a total of twenty-nine times, M.E. was discharged on January 22, 2010.

87.     M.C. allegedly began her treatment at Dorchester Chiropractic on November 3, 2009. After treating there a total of twenty-seven times, M.C. was discharged on January 20, 2010.

88.     From November 4, 2009 until January 20, 2010, M.E. and M.C. reportedly visited Dorchester Chiropractor on the exact same dates, receiving the exact same treatment on each and every visit, including physiotherapies such as hot/cold packs and electrical stimulation, and intersegmental traction.  (*See* **Exhibit 9**, a side-by-side comparison of M.E. and M.C.'s treatment).

89.     At Dorchester Chiropractic, M.E. and M.C. received the same treatment program, which lacked individual clinical decision-making, regardless of patients' variables, such as age.

90.     Massachusetts courts have repeatedly found that providing a recipe of treatment absent any individualized medical decision making, is excessive and unreasonable treatment is a violation of Massachusetts Law. See *Columbia Chiropractic Group, Inc. v. Trust Ins. Co.,* 430 Mass. 60 (1999); *Commerce Insurance Company et al v. Corbett, et al.,* 2011 Mass. Super. LEXIS 396 (2011) and; *Blue Hill Chiropractic Group, Inc. v. Encompass Insurance Company,* 2011 Mass. Super, LEXIS 74 (Mass. Super. Ct. April 22, 2011).

### iv.     THE DEFENDANTS BILLED GEICO FOR TREATMENT THAT WAS EXAGGERATED AND/OR NOT RENDERED

91.     In addition to the forgoing, the Defendants submitted medical records and invoices to GEICO for treatment that was not rendered.

92.     This pattern of deceptive conduct, engaged in by Dorchester Chiropractic and its licensees, described in further detail below, is best demonstrated by analyzing the following exemplar claims:

DOL:               3/11/11
Claimant:          B.B.
GEICO Claim No.:   0399439120101018

93.     On March 11, 2011, at approximately 12:06 P.M., B.B. was reportedly involved in a motor vehicle accident. Although the police report documenting the accident reported that B.B. did not sustain any injuries, (*see* **Exhibit 2, Tab S)**, on the morning of March 11, 2011. B.B. presented at Dorchester Chiropractic for an evaluation.  Thereafter, a PIP claim was filed with GEICO.  (*See* **Exhibit 10**, p. 84.)

94.     B.B. never received any physiotherapy treatment at Dorchester Chiropractic. Despite this fact, Dorchester Chiropractic billed GEICO for two different physiotherapies. (*See* **Exhibit 10**, p. 80).

95.     It is a violation of 233 CMR 4.09(d) to charge patients "for any treatment, procedure or service which were not rendered, were not fully rendered, or were not fully represented by the charging chiropractor."

96.     It is a violation of 233 CMR 4.11(2)(a) to make a "false statement or misrepresentation of a material fact in any application for payment of a health care benefit."

97.     In violation of 233 CMR 4.09(d) and 233 CMR 4.11(2)(a), Dorchester Chiropractic and its licensees fraudulently submitted invoices to GEICO for the following treatment it claims was rendered to B.B. on March 11, 2011:

CPT code 97014 (electrical stimulation); and,

CPT code 97010 (hot/cold packs).

98.     In addition, and also in violation of 233 CMR 4.09(d) and 233 CMR 4.11(2)(a), the Defendants created a fraudulent medical report to support the claim that

electrical stimulation and ice pack treatments were, in fact, rendered to B.B. on March 11, 2011.

> **DOL:**          **5/12/11**
> **Claimants:**    **J. R.**
> **GEICO Claim No.:**  **0408252730101024**

99.     On May 12, 2011, J.R. was reportedly involved in a motor vehicle accident. Following the accident, J.R. presented at Dorchester Chiropractic for treatment, and subsequently filed a PIP claim with GEICO.  As part of an investigation into J.R.'s claim, GEICO requested J.R. appear for an EUO.

100.    On October 24, 2011, J. R. appeared for an EUO, and testified that the only doctor who rendered treatment to her on each and every visit was Defendant Lustgarten. (Rivera's EUO transcript is attached as **Exhibit 11**, at pp. 30-32, and photo marked as **Exhibit 11, Tab A**).

101.    After being shown a photograph of Blackwood and Lustgarten, which was posted on Dorchester Chiropractic's website, J.R. testified to the following:

> Q.    [D]o you recognize either of these two guys?
>
> A.    The owner and the other guy who works there.
>
> Q.    Did either of those gentlemen provide treatment to you?
>
> A.    This one.
>
> Q.    That one? Okay. That one only, but not the other one?
>
> A.    Not him.
>
> *       *       *
>
> Q.    I'll represent to you and to your attorney, too, that Gerald Blackwood is the first individual photographed and the

second one is an individual by the name of Eric Lustgarten.

This is taken from the Dorchester Chiropractic website.  I

just took it. And you just told me that the only person who

provided treatment to you was Eric Lustgarten but not

Gerald Blackwood; is that correct?

A.     Correct. There are a lot of people there who know me.

Q.     But Eric Lustgarten is the one that provided treatment to

you?

A.     Yes.

Q.     Each and every visit that you went?

A.     Yes.

(*See* **Exhibit 11**, pp. 30-32).

102.     According to the medical records and bills submitted by Dorchester

Chiropractic, J.R. presented for a total of thirty-one (31) visits.  The same medical records

and invoices, however, represent that Blackwood rendered treatment to J.R. on eleven (11) of

her visits to Dorchester Chiropractic. (*See* **Exhibit 11, Tab B**).

103.     Upon information and belief, the Defendants submitted fraudulent records and

invoices to GEICO for eleven (11) visits, representing treatment that was rendered to J.R. by

Blackwood, which never occurred, in violation of 233 CMR 4.09(d) and 233 CMR

4.11(2)(a).

**v.    THE DEFENDANTS BILLED GEICO UTILIZING THE
HEALTH INSURANCE CLAIM FORM, CMS-1500,
THEREBY ADOPTING THE LANGUAGE CONTAINED
THEREIN**

104.    In purported compliance with the PIP statute, Dorchester Chiropractic submitted bills containing charges for medical services rendered, using the Health Insurance Claim Form, CMS-1500.  (Sample CMS-1500 Form, attached hereto as **Exhibit 12**).

105.    Every CMS-1500 contains a "False Information Clause," which lists the following disclaimer:

> *Any person who knowingly files a statement of claim containing any misrepresentation of any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.*

106.    The CMS 1500 Claim Form is a standard claim form used by health care professionals.

107.    The CMS 1500 Claim Form, repeatedly submitted to GEICO by Dorchester Chiropractor, contained the following legend on the reverse side:

> *"Any person who knowingly files a statement of claim containing any misrepresentation of any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."*

108.    Furthermore, the front side of the CMS 1500 Claim Form contains the following certification: "I certify that the statements on the reverse apply to this bill and are made a part thereof."  The reverse side of the CMS 1500 Claim Form also contains the following certification:

> *"I certify that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision."*

109.   Pursuant to 233 CMR 4.11(1), the MBC may take disciplinary action against a chiropractic facility pursuant to 233 CMR 4.06, if a registered chiropractor or the chiropractic facility makes a false statement or misrepresentation of material fact in connection with any application or claim for payment of any health care benefit.

110.   For purposes of 233 CMR 4.11 and 233 CMR 4.06, making a false statement or misrepresentation of material fact in connection with the application or claim of payment of any health care benefit includes; making or causing to be made any false statement or misrepresentation of a material fact in any application of payment of a health care benefit.

111.   Pursuant to 233 CMR 4.11(3), a statement made in connection with an application or claim for payment of a health care benefit is false, within the meaning of 233 CMR 4.11, if it is wholly or partially false, fictitious, fraudulent, untrue or deceptive.

112.   Pursuant to 940 CMR 3.16, it is a violation of M.G.L. c. 93A, §2 for any person or legal entity to fail to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health and safety.

113.   Dorchester Chiropractic repeatedly misidentified the treating provider and falsely certified medical bills utilizing the CMS-1500 Claim Form.  This operation and pattern of conduct, engaged in by Dorchester Chiropractic and its employees and licensees, described below, are demonstrated by the following exemplar claims:

**DOL: 9/8/2011**
**Claimant: R.M.**
**GEICO Claim No.: 0373706790101019**

114.     On September 9, 2011, R.M. was reportedly involved in a motor vehicle accident. Following the accident, R.M. presented to Dorchester Chiropractic for treatment and subsequently filed a PIP claim with GEICO.

115.     In regard to the R. M. claim, Dorchester Chiropractic billed GEICO for treatment allegedly rendered by both Blackwood and Lustgarten utilizing the CMS-1500 Claim Form. According to R.M.'s records, Lustgarten treated R.M. seven (7) out of thirteen (13) visits. Blackwood certified all of R.M.'s medical bills as being true, accurate and medically necessary. (*See* **Exhibit 12, Tab A**).

116.     When Lustgarten was allegedly rendering treatment to R.M., (*see* **Exhibit 12, Tab A**), Blackwood was unable to provide immediate, personal supervision of Lustgarten and/or confirm that the alleged treatment was actually rendered by Lustgarten and/or necessary. Therefore, Blackwood cannot certify R.M.'s medical bills.

117.     By submitting false medical bills to GEICO, the Defendants violated 233 CMR 4.11.

**DOL: 6/26/2010**
**Claimant: C.S.**
**GEICO Claim No.: 0375494060101039**

118.     On June 26, 2010, C.S. was reportedly involved in a motor vehicle accident. Following the motor vehicle accident, C.S. presented at Dorchester Chiropractic for treatment and subsequently filed a PIP claim.

119.   In regard to the C. S.'s claim, Dorchester Chiropractic billed GEICO for treatment allegedly rendered by both Blackwood and Lustgarten.  While Blackwood treated C.S. eight (8) times and Lustgarten treated C.S. ten (10) times, Blackwood certified all of C.S.'s medical bills, utilizing the CMS-1500 Claim Form, as being true, accurate and medically necessary.  (*See* **Exhibit 12, Tab B**).  Blackwood further certified that all of the treatment rendered to C.S. was "personally furnished by me or was furnished incident to my professional service by my employee under my immediate personal supervision." (*See* **Exhibit 12, Tab B**).

120.   Blackwood therefore did not personally render all of C.S.'s medical treatment at Dorchester Chiropractic, and was unable to provide immediate, personal supervision to Lustgarten and/or confirm that the alleged treatment took place.

121.   By submitting false medical bills to GEICO, the Defendants violated 233 CMR 4.11.

>**DOL: 2/7/2009**
>**Claimant:  J.L.**
>**GEICO Claim No.:  0377911590101013**

122.   On February 7, 2009, J.L was involved in a reported motor vehicle accident.  Following the accident, J.L presented to Dorchester Chiropractic for treatment and subsequently filed a PIP claim with GEICO.

123.   In regard to the J. L. claim, Dorchester Chiropractic billed GEICO for treatment allegedly rendered by both Blackwood and Lustgarten; Blackwood treated J.L. five (5) times and Lustgarten treated J.L. seven (7) times.  Inexplicably, Blackwood certified all of J.L.'s medical bills utilizing the CMS Claim Form.  (*See* **Exhibit 12, Tab C**).  Blackwood further certified that all of the treatment rendered to C.S. was "personally furnished by me or

was furnished incident to my professional service by my employee under my immediate

personal supervision." (*See* **Exhibit 12, Tab C**).

124.    Blackwood, did not provide Lustgarten with immediate, personal supervision

when Lustgaren was treating J.L.  As such, Blackwood could not truthfully certify that all of

J.L.'s medical bills were true, accurate, medically necessary, and actually rendered.

125.    By submitting these fraudulent medical bills to GEICO, the Defendants

violated 233 CMR 4.11.

126.    In order to determine Dorchester Chiropractic's entitlement to No-Fault

benefits, as is permitted by Massachusetts law, GEICO required, and Dorchester Chiropractic

submitted, documentation describing the purported treatment, dates and costs of such

treatment, together with the certification in the CMS-1500 Claim Forms, that the treatment or

services rendered were reasonable and necessary and were incurred as a result of an

automobile accident.

127.    By utilizing the CMS-1500 Claim Form, repeatedly submitted to GEICO by

Dorchester Chiropractor, Dorchester Chiropractic; its employees and licensees adopted

and/or incorporated the language of the CMS-1500 Claim Form, thereby making an

affirmative representation that the contents of the submitted medical bills were true and

accurate and medically necessary.

128.    To fulfill its obligation to promptly process claims under Massachusetts's No

Fault Personal Injury Protection Statute, GEICO justifiably relied upon the accuracy of the

Dorchester Chiropractic CMS-1500 Claim Forms and documentation submitted in support of

PIP claims.

129.   As a result, GEICO paid the Defendants based on the representations and information sent to GEICO by the Defendants.

130.   In addition, by utilizing the CMS-1500 Claim Form, repeatedly submitted to GEICO, the Defendants adopted and/or incorporated the language of the CMS-1500 Claim Form, thereby making an affirmative representation that the contents of the submitted medical bills were true and accurate and medically necessary.

131.   The CMS-1500 Form contains a series of questions including, but not limited to the claimant's social status and medical history.  Specifically, question No. 15 on the front side of the CMS Claim Form asks the following:

> **"IF THE PATIENT HAS HAD SAME OR SIMILAR ILLNESS.**
> **GIVE FIRST DATE."**

(*See* **Exhibit 12**).

132.   By failing to indicate that the claimants listed above in section (i) had sustained prior injuries requiring chiropractic treatment, Dorchester Chiropractic created a false CMS-1500 Claim Form.  By then submitting these fraudulent medical bills to GEICO, Dorchester violated 233 CMR 4.11.

**vi.**   **ADDITIONAL CLAIMS AND EVIDENCE THAT THE DEFENDANTS ENGAGED IN A PATTERN OF FRAUDULENT ACTIVITY IN FURTHERANCE OF A RICO ENTERPRISE**

133.   The pattern of fraudulent conduct engaged in by the Defendants is further exemplified by the following two claims involving other Massachusetts insurance carriers, summarized herein to demonstrate the Defendants pattern of fraudulent conduct, and to demonstrate that the Defendants participated in the affairs of a RICO enterprise. See *Aetna Cas. Surety Co. v. P & B Autobody*, 43 F.3d 1456 (1st Cir. 1994).

DOL:  8/24/10
Claimant: S.C.
Progressive Claim No.: 20-1334705

### EUO Testimony of S.C.

134.    On August 24, 2010, S.C. was involved in a motor vehicle accident wherein he sought medical treatment at Dorchester Chiropractic, and filed a PIP claim with Progressive Insurance Company.

135.    As part of an investigation into S.C.'s claim, Progressive Insurance Company requested the EUO of S.C..

136.    During his EUO, S.C. admitted that a runner named James Joseph instructed him to intentionally cause damage to his vehicle and subsequently seek chiropractic treatment at Dorchester Chiropractic. (**Exhibit 13**, pps. 14, 110, 113-116, 118, 136, 151).

137.    S.C. testified that James Joseph also instructed him to claim that he was suffering from neck and lower back pain. (**Exhibit 13**, pps. 119, 123).

138.    S.C. confessed that his claimed injuries were ***not real.*** (**Exhibit 13**, pps. 14, 110, 113-116, 118, 136, 151).

139.    S.C. testified that James Joseph brought him to Dorchester Chiropractic, and that upon entering, he was introduced to a chiropractor. During his EUO testimony, S.C. identified a photograph of Defendant Blackwood as the chiropractor he met and who subsequently "treated" him at Dorchester Chiropractic. (**Exhibit 13**, pps. 121, 124).

140.    S.C. testified that minutes after his introduction to Blackwood, James Joseph handed him $200.00 dollars outside the offices of Dorchester Chiropractic (**Exhibit 13**, pps. 123-124).

141.    S.C. testified that it was his understanding that the $200.00 dollars was his reward for agreeing to "treat" at Dorchester Chiropractic. (**Exhibit 13**, p. 128).

142.    S.C. testified that he presented for "treatment" at Dorchester Chiropractic twelve to fourteen times despite the fact that he was not injured or experiencing any pain. (**Exhibit 13**, pps. 21, 60, 152).

143.    In short, when describing his claim as a whole, S.C. plainly stated, "the truth is everything was made up." (**Exhibit 13**, p. 109).

**DOL: 12/10/11**
**Claimant: J. R.**
**Commerce Claim No.: YHK930-VYPX92**

### EUO Testimony of J. R.

144.    On December 10, 2011, J.R. was reportedly involved in a motor vehicle accident.  Following the accident, J.R. presented for treatment at Dorchester Chiropractic and filed a PIP claim with Commerce Insurance Company ("Commerce").

145.    As part of an investigation into J.R.'s claim, Commerce requested the EUO of J.R.

146.    J.R. admitted that he was ***not injured*** and testified in part:

> Q.    Did you pretend to be hurt so that you could make money on an accident claim?
>
> A.    Yes.

(**Exhibit 14**, p. 148).

147.    J.R. admitted that despite not being injured, he sought "treatment," believing that he would be paid by Dorchester Chiropractic for treating there and bringing in additional patients. (**Exhibit 14**, pp. 110, 113-114, 120, 129, 136).

148.    J.R. testified that based upon his experience with insurance claims, he believed he could make money by treating at a facility and by referring people to the facility for treatment. (**Exhibit 14**, p. 130).

149.    J.R. testified that while a patient at Dorchester Chiropractic, Dr. Blackwood paid him $200.00 dollars in cash to hand out flyers in an effort to solicit patients. (**Exhibit 14**, p. 133).

150.    J.R. testified that approximately one month into his "treatment" at Dorchester Chiropractic, Salis Rankins and Brandy O'Neill presented for "treatment." J.R. testified in part: "After I talked with Dr. Blackwood then I said to [Rankins and O'Neill], "Why don't you all just go to treatment so that – you can actually, you know, get some money" and they said, "Well, okay." (**Exhibit 14**, pp.134-135).  According to J.R., Salis Rankins and Brandy O'Neill were not involved in the December 10, 2011 accident.

151.    J.R. testified that while treating at Dorchester Chiropractic he made another insurance claim regarding an alleged car accident in March 2012. (**Exhibit 14**, pp. 35-37).

152.    J.R. confirmed that similar to his December 2011 accident, he *was not injured* in his March 2012 accident. (**Exhibit 14**, p. 148 )

153.    While still "treating" at Dorchester Chiropractic for the December 10, 2011 accident, J.R. presented for "treatment" at Dorchester Chiropractic yet again for injuries allegedly sustained in the March, 2012 accident. (**Exhibit 14**, p. 35).

154.    In summarizing all of his "treatment" at Dorchester Chiropractic, J.R. testified in part:

> Q.    "Do you think that the treatment that you're receiving now at Dorchester Chiropractic is reasonable and necessary?

A.     To be honest, no. That's to be honest with you."

(**Exhibit 14**, p. 147).

## B.     ACTS OF MAIL AND WIRE FRAUD

155.    Every automobile insurance claim detailed within involved at least two uses

of the United States Mail and/or two uses of interstate telephones.  These mail and

telephone/wire communications included, by way of illustration rather than limitation, notice

of claims, appraisals, correspondence, photographs, medical reports, chiropractic records,

bills, invoices, insurance payments, statements, claims settlement checks, and the return of

the cancelled settlement drafts to the financial institution(s) from which the draft(s) were

drawn, as well as return of settlement draft duplicates to the insurance carrier's out of state

home office for filing.  A chart detailing individual instances of communication by United

States Mail and interstate wires in relation to GEICO claims is attached hereto as **Exhibit 15**,

and is fully incorporated herein by reference.

156.    Each paid GEICO claim involves at least two mailings since negotiated

checks are always transported via the United States Mail.  In each claim that GEICO paid, a

check was mailed from GEICO to Dorchester Chiropractic.

157.    Almost all of the telephone calls and faxes involving the claims at issue in this

action occurred between the Defendants located in Massachusetts and GEICO's out of state

offices located in either New York or Maryland.  Consequently, almost all telephonic

communications constituted interstate activity.

158.    The Defendants used the US mail and interstate telephones to further the

fraudulent scheme, and/or acted with knowledge that the use of the US mail and interstate

telephones would follow in the ordinary course of business.

159.    The Defendants knew that an insured, claimant, medical facility, attorney, and/or representatives of GEICO would use the mails and interstate telephones to facilitate payments to the recipients.

160.    Pursuant to their conspiracy agreement, the Defendants repeatedly, falsely, and intentionally certified to GEICO, via mail and telephone, that:

   a.    Certain medical bills and records were reasonable and necessary; and,

   b.    Certain injury claims were legitimate.

161.    These fraudulent schemes, which took place consistently over the course of three (3) years, considered collectively, demonstrate that the Defendants' acts of mail and/or wire fraud constituted a pattern of racketeering activity.

162.    Upon information and belief, the insurance fraud enterprise initiated, developed, maintained, and secreted by the Defendants, and others presently unknown to GEICO, resulted in payment by GEICO to the Defendants' of fraudulently obtained insurance proceeds.

## VI.   DAMAGES

163.   As of the date of this Complaint, the Defendants have submitted (via U.S. mail, facsimile, and/or electronic mail) one hundred ninety-three thousand three hundred fourteen dollars (**$193,314.00**) in bills to GEICO.

164.   GEICO, in good faith, paid one hundred thirty-six thousand two hundred seventy-one dollars and sixty cents (**$136,271.60**) in Dorchester Chiropractic bills before discovering the Defendants fraud scheme.

165.   As a consequence of the Defendants' pattern of fraudulent conduct, GEICO suffered damages, which include, but are not limited to, the monies detailed in the Dorchester Chiropractic Damages Chart, which is attached hereto as **Exhibit 16** and is fully incorporated herein.  The full extent of GEICO's damages is known only to the Defendants and, therefore, can only be ascertained through discovery.

166.   Since the Defendants' pattern of fraudulent conduct is ongoing, GEICO's damages are increasing with each day that the enterprise continues to operate its schemes. GEICO believes its true damages (including expenses and bodily injury payments) are significant and will exceed the amounts listed in **Exhibit 16**.  **Exhibit 16** memorializes the claim number, date of loss, initials of named insured, initials of claimant, amount billed, amount paid, chiropractor who performed initial exam, and the listed treating chiropractors.

## VII.   CAUSES OF ACTION

### A.   FEDERAL CAUSES OF ACTION

### CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (DORCHESTER CHIROPRACTIC ENTERPRISE)
### AGAINST GERARD BLACKWOOD AND ERIC LUSTGARTEN

167.   GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

168.   Dorchester Chiropractic, Inc., constitutes an "enterprise," as defined in 18 U.S.C. § 1961(4). Moreover, Dorchester Chiropactic constitutes an enterprise engaged in, and the activities of which, affect interstate commerce.

169.   In connection with each of the claims identified in this Amended Complaint, Gerard Blackwood and Eric Lustgarten (Count I Defendants), intentionally caused to be prepared and mailed false medical documentation by Dorchester Chiropractic, or knew that such false medical documentation would be mailed in the ordinary course of Dorchester Chiropractic's business, in furtherance of the Count I Defendants' scheme to defraud.

170.   The Count I Defendants employed, and knew that two or more mailings and wires demanding payment from GEICO on certain dates, including, but not limited to, those dates identified in the mail and wire fraud chart (*see* **Exhibit 15**), would be sent to GEICO.

171.   Among other things, medical records, bills, invoices, applications for insurance, applications for benefits, premium checks and various other documents were delivered to GEICO through the U.S. Mail and wires.

172.   Policies of insurance were delivered to insureds through the U.S. Mail.

173.   Payments to Dorchester Chiropractic from GEICO were transmitted through the U.S. Mail/wires.

174.   As documented above, the Count I Defendants, using their access to the clinic and relationships with one another, continuously and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to GEICO for medical expenses

and/or services that were purportedly performed at and/or by Dorchester Chiropractic to collect payment from GEICO under the personal injury protection benefits portion of the GEICO policies and applicable provisions of the Massachusetts PIP statute.

175.    As a result of, and in reasonable reliance on, these misleading documents and misrepresentations, GEICO, by its agents and employees, issued drafts for payment to Dorchester Chiropractic for the benefit of the Count I Defendants that would not otherwise have been paid.

176.    The Count I Defendants' pattern of submitting fraudulent claims that appeared legitimate on their face, prevented GEICO from discovering the fraudulent scheme for a prolonged period of time, thus enabling the Count I Defendants to continue their fraudulent scheme without detection.

177.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §1341 and 1343 (mail and wire fraud).

178.    By mailing, or agreeing that the mail would be used, to submit numerous fraudulent claims in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

179.    The activities alleged in this Amended Complaint had the direct effect of causing funds to be transferred from GEICO to Dorchester Chiropractic for the benefit of the Count I Defendants.

180.    The Count I Defendants participated, both directly and indirectly, in the conduct of this enterprise through a pattern of racketeering activities outlined in the balance of this Amended Complaint.

181.    GEICO is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' fraudulent acts.

182.    The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of GEICO's injury.

183.    GEICO is in the business of writing insurance and paying claims in the Commonwealth of Massachusetts.

184.    Insurance fraud schemes practiced here and elsewhere have a deleterious impact on GEICO's overall financial well-being and adversely affect insurance rates.

185.    By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), GEICO is entitled to recover from the Count I Defendants treble damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted, by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**WHEREFORE**, GEICO demands judgment against the Count I Defendants individually, jointly and severally as follows:

a.    Actual and consequential damages to be established at trial;

b.    Treble damages, interest, costs and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964;

c.    Injunctive relief, as the Court deems just, enjoining the Count I Defendants from engaging in further wrongful activities as alleged in the Amended Complaint;  and,

d.    All other relief this Court deems just.

**COUNT II**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**(DORCHESTER CHIROPRACTIC CONSPIRACY)**
**AGAINST GERARD BLACKWOOD AND ERIC LUSTGARTEN**

186.    GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

187.    Blackwood, and Lustgarten, (Count II Defendants) conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation and operation of Dorchester Chiropractic.

188.    The Count II Defendants each agreed to further, facilitate, support, and/or operate the Dorchester Chiropractic enterprise.

189.    As such, the Count II Defendants conspired to violate 18 U.S.C. § 1962(c).

190.    The purpose of the conspiracy was to obtain Massachusetts personal injury protection benefits from GEICO on behalf of Dorchester Chiropractic, even though Dorchester Chiropractic was not eligible to collect PIP benefits by virtue of its unlawful conduct.

191.    The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to GEICO of insurance claim documents containing material misrepresentations and/or material omissions.

192.    GEICO has been injured in its business and property by reason of this conspiratorial conduct, whereas GEICO has been induced to make payment of PIP benefits and bodily injury claims as a result of the Count II Defendants' unlawful conduct described herein.

193.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to GEICO, and GEICO is entitled to recover from each treble

damages sustained by reason of the claims submitted by, or on behalf of the Count II

Defendants, and others acting in concert with them, together with the costs of suit, including

reasonable attorney's fees.

**WHEREFORE**, GEICO demands judgment against the Count II Defendants

individually, jointly and severally as follows:

a.   Actual and consequential damages to be established at trial;

b.   Treble damages, interest, costs and reasonable attorney's fees, pursuant

to 18 U.S.C. § 1964;

c.   Injunctive relief, as the Court deems just, enjoining the Count II

Defendants from engaging in further wrongful activities as alleged in the

Amended Complaint; and,

d.   All other relief this Court deems just.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (ASSOCIATION-IN-FACT ENTERPRISE)

194.   GEICO repeats and realleges the allegations of all paragraphs above as if fully

set forth herein.

195.   In each of the GEICO claims, the Defendants and others known and unknown

to GEICO, intentionally caused to be prepared and mailed false, fraudulent, and/or

misleading documentation for insurance claims to GEICO, in furtherance of the Defendants'

scheme to defraud.  Said Defendants relied upon one or more mailings and/or interstate wire

communications, to demand and/or receive payment on certain dates, including, but not

limited to, those dates referenced above.

196.    Correspondence, including but not limited to, medical records, reports, and other documents were delivered to GEICO through the United States Mail or via interstate telephone wires, and claims were made or negotiated by US mail, interstate telephone calls and/or faxes.

197.    GEICO routinely corresponded with the Defendants by sending drafts and/or requests for further information and/or other letters relating to claims through the US Mail.

198.    As a result of this false, fraudulent, and/or misleading documentation and other material misrepresentations, GEICO by its agents and employees, issued payment to Dorchester Chiropractic and Gerard Blackwood, D.C. that would not otherwise have been issued.

199.    The Defendants' fraudulent claims, each appearing legitimate on its face, prevented GEICO from discovering the fraudulent scheme for a long period of time, enabling the Defendants to evade detection.

200.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §§ 1341 and 1343 (relating to mail and wire fraud, respectively).

201.    By filing numerous fraudulent claims in an ongoing scheme, the Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

202.    The Defendants' unlawful activities, as well as their normal day-to-day operations, involve and affect interstate commerce.

203.    The activities alleged in this Amended Complaint had the direct effect of causing funds to be transferred from GEICO to the Defendants.

204.    GEICO is in the business of writing insurance and paying legitimate claims throughout the United States.  Insurance fraud schemes practiced here, and elsewhere,

adversely affect insurance rates across the country. As such, they harm the public at large, and affect interstate commerce.

205.    The Defendants, and other individuals known and unknown to GEICO, constitute an enterprise that is engaged in activities affecting interstate commerce and, in combination, constitute an Association-In-Fact enterprise separate and distinct from any one Defendant named herein.

206.    The Dorchester chiropractors have conducted the affairs of the Defendants through a pattern of racketeering activity.

207.    Each of the Defendants have associated with the businesses and participated directly or indirectly, in the conduct of the Defendants' affairs through a pattern of racketeering activity.

208.    GEICO is a "person" that has been injured in its business or property by reason of this conduct as defined by 18 U.S.C. § 1961(3).

209.    By virtue of the Defendants' violations of 18 U.S.C. § 1962(c), GEICO is entitled to recover from each of the identified Defendants, treble the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**WHEREFORE**, GEICO demands judgment against the Defendants individually, and jointly and severally as follows:

a.    Actual and consequential damages to be established at trial;

b.    Treble damages, interest, costs and reasonable attorney's fees; and,

c.    Injunctive relief, as the Court deems just, enjoining the Defendants from engaging in further wrongful activities as alleged in the Complaint.

<u>COUNT IV</u>
<u>INNOCENT VICTIM ENTERPRISE VIOLATION OF 18 U.S.C. § 1962(c)</u>

210.    GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

211.    GEICO is an enterprise which is engaged in, and whose activities affect, interstate commerce.

212.    In violation of 18 U.S.C. § 1962(c), the Defendants, by acting with purpose to cause GEICO to make payments on false claims, victimized GEICO by participating in its affairs, directly or indirectly, through a pattern of racketeering activity, including on at least two or more occasions within a ten (10) year period, using the US Mail or interstate wires to further their insurance fraud schemes.

213.    GEICO has been injured in business and property in violation of 18 U.S.C. § 1962(c).

214.    By virtue of Defendants' violations of 18 U.S.C. § 1962(c), GEICO is entitled to recover from each of the identified Defendants, treble the damages sustained as a result of claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**WHEREFORE**, GEICO demands judgment against the Defendants individually, and jointly and severally as follows:

a.    Actual and consequential damages to be established at trial;

b.    Treble damages, interest, costs and reasonable attorney's fees; and,

c.    Injunctive relief enjoining the Defendants from engaging in the wrongful activities alleged in the Complaint as the court deems just.

## COUNT V
## RICO CONSPIRACY VIOLATION 18 U.S.C. § 1962(d)

215.    GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

216.    The Defendants conspired with one another to violate 18 U.S.C. § 1962(c), and thereby violated 18 U.S.C. § 1962(d).

217.    As a result of this conspiratorial conduct, GEICO has been injured in its business and property.

218.    By virtue of Defendants' violations of 18 U.S.C. § 1962(c), GEICO is entitled to recover from each of the identified Defendants, treble the damages sustained as a result of claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**WHEREFORE**, GEICO demands judgment against the Defendants individually, and jointly and severally as follows:

a.    Actual and consequential damages to be established at trial;

b.    Treble damages, interest, costs and reasonable attorney's fees; and,

c.    Injunctive relief as the court deems just enjoining the Defendants from engaging in the wrongful activities alleged in the Complaint.

**B.    STATE LAW CAUSES OF ACTION**

## COUNT VI
## FRAUD

219.    GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

43

220.   The Defendants' scheme to defraud GEICO was dependent upon a succession of material misrepresentations of fact made by the Defendants with respect to the injuries allegedly sustained by the patients, medical billing, medical services rendered, the reporting of losses and the evaluation of injuries.

221.   The material misrepresentations of fact by Defendants include, but are not limited to:

    a.   Intentionally creating false and inaccurate patient histories in an effort to deceptively justify medically unnecessary chiropractic treatment;

    b.   Intentionally exaggerating the nature and extent to the patients' injuries for the deliberate purpose of increasing treatment for pecuniary gain;

    c.   Conducting chiropractic treatments which were unjustified by the patients' examination findings and diagnoses;

    d.   Rendering a recipe of chiropractic treatment predetermined by established protocols, absent any individualized clinical decision-making; and,

    e.   Intentionally creating and submitting deceptive medical reports and bills to GEICO which presented a clinical picture that magnified patients' injuries and the need for chiropractic treatment for the purpose of maximizing financial profit.

222.   The Defendants' representations were false, or required disclosure of additional facts, in order to render the information furnished not misleading.  The misrepresentations and non-disclosures were intentionally made in furtherance of the scheme to defraud GEICO.

223.   When these misrepresentations were made, they were known to be false by the Defendants, and were made intentionally for the purpose of inducing GEICO to make payments for claims that were not legitimate.

224.     GEICO reasonably relied upon such material misrepresentations to its

detriment in paying numerous, unnecessary, non-meritorious bills for medical expenses

pursuant to M.G.L. c. 90, § 34M, and the GEICO Massachusetts Automobile Insurance

Policy.

225.     GEICO's damages include, but are not limited to:

    a.     Monies paid to the Defendants and others;

    b.     Monies paid for medical services and/or expenses that were
unwarranted and/or excessive;

    c.     Monies paid in settlement of claims based upon fraudulent damages;

    d.     Reimbursement for the fair and reasonable value of the labor and
resources expended to detect and expose Defendants' scheme to
defraud GEICO;

    e.     Costs incurred in connection with this action; and,

    f.     Interest and costs allowable by law.

**WHEREFORE**, GEICO demands judgment against the Defendants individually, and

jointly and severally as follows:

    a.     Actual and consequential damages to be established at trial;

    b.     Interest, costs and reasonable attorney's fees; and,

    c.     Such other relief the Court deems just.

### COUNT VII
### CIVIL CONSPIRACY

226.     GEICO repeats and realleges the allegations of all paragraphs above as if fully

set forth herein.

227.     The Defendants did agree, combine, confederate, contrive, and conspire with

one another to defraud GEICO.

228.    By joining in this conspiracy to defraud, the Defendants were collectively able to negate the safeguards that would have prevented any one person acting alone, from accomplishing a fraud of this type.

229.    As a consequence of the aforesaid conspiracy, GEICO was induced to and did pay numerous fraudulent and non-compensable medical claims.

230.    GEICO's damages include, but are not limited to:

  a.  Monies paid to the Defendants and others;

  b.  Monies paid for medical services and/or expenses that were unwarranted and/or excessive;

  c.  Monies paid in settlement of claims based upon fraudulent damages;

  d.  Reimbursement for the fair and reasonable value of the labor and resources expended to detect and expose Defendants' scheme to defraud GEICO;

  e.  Costs incurred in connection with this action; and,

  f.  Interest and costs allowable by law.

**WHEREFORE**, GEICO demands judgment against the Defendants individually, and jointly and severally as follows:

  a.  Actual and consequential damages to be established at trial;

  b.  Interest, costs and reasonable attorney's fees; and,

  c.  Such other relief the Court deems just.

**COUNT VIII**
**VIOLATIONS OF M.G.L. C. 93A, § 11**

231.    GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

232.    Section 2(a) of the Massachusetts Consumer Protection Act, M.G.L. c. 93A provides, that "unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

233.    At all times relevant hereto, Defendants were engaged in trade or commerce within the Commonwealth of Massachusetts.

234.    The conduct alleged throughout this Complaint was all intentional and occurred primarily in Massachusetts.

235.    The acts and omissions of Defendants, in furtherance of their scheme to defraud GEICO including, but not limited to, the conduct alleged above, constitute intentionally unfair and deceptive business practices in trade or commerce, as proscribed by M.G.L. c. 93A, §§ 2 and 11, and those regulations promulgated by the Office of the Attorney General for the Commonwealth of Massachusetts pursuant thereto.

236.    The Defendants' unlawful conduct forced GEICO to incur attorney's fees. Such fees constitute a loss of money or property, and are recoverable pursuant to M.G.L. c. 93A.

237.    As a result of the above-described deceptive business practices, GEICO sustained injury and economic damages including, but not limited to:

      a.     All monies paid to Defendants, in reliance on false chiropractic bills;

      b.     The cost of investigating the underlying PIP claims; and,

      c.     The costs incurred in connection with this action (including all attorney's fees, and costs).

238.    The Defendants' actions described herein were performed intentionally. Accordingly, GEICO is entitled to treble damages, costs and attorneys' fees.

**WHEREFORE**, GEICO demands judgment against the Defendants individually, and jointly and severally as follows:

a.   Actual and consequential damages to be established at trial;

b.   Treble damages, interest, costs and reasonable attorney's fees; and,

c.   Injunctive relief enjoining the Defendants from engaging in the wrongful activities alleged in the Complaint as the court deems just.

## COUNT IX
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

239.   GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

240.   The Defendants intentionally interfered with the contractual relations of GEICO and its insured, thereby causing monetary damages and financial harm.

241.   More specifically:

a.   Defendants interfered with the insurance contracts issued by GEICO; and,

b.   Defendants intentionally induced insureds and third parties to breach GEICO's insurance contracts.

**WHEREFORE**, GEICO seeks its actual damages proximately caused by the Defendants' actions.

## COUNT X
## INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

242.   GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

243.   The Defendants intentionally interfered with the advantageous business relationships of GEICO, thereby causing it to suffer direct monetary losses and actual damages.

244.   More specifically:

   a.   At all times material to this Complaint, GEICO enjoyed advantageous business relationships with its insureds;

   b.   Defendants had knowledge of these advantageous business relationships;

   c.   Defendants intentionally interfered with the above-referenced advantageous business relationships;

   d.   GEICO suffered a loss of business advantage as a direct result of the Defendants conduct; and,

   e.   Defendants' interferences with GEICO's advantageous business relationships will likely continue in the future.

**WHEREFORE**, GEICO seeks its actual damages proximately caused by the Defendants' actions.

## COUNT XI
## UNJUST ENRICHMENT

245.   GEICO hereby repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

246.   GEICO unwittingly conferred benefits on Defendants in connection with making payments to Defendants pursuant to false, illegal and improper claims for personal-injury protection benefits for insureds in the amount listed in GEICO's damages chart attached hereto as **Exhibit 17**.

247.   Defendants voluntarily accepted and retained the benefits GEICO unwillingly conferred upon them.

248.    The Defendants retention of these amounts paid by GEICO is wrongful because these monies were obtained as a direct result of the violations, misrepresentations and other fraudulent activity set forth within GEICO's Amended Complaint.

249.    Defendants' retention of reimbursement amounts paid by GEICO is wrongful because these monies were obtained for healthcare services allegedly provided by a healthcare facility and healthcare practitioners in violation of applicable Massachusetts regulations and case law.

250.    GEICO has been harmed by Defendants' acts of wrongfully obtaining and retaining these benefits because GEICO would not have paid the Defendants' bills, had it known at the time it paid these claims, that the alleged services were not being provided pursuant to Massachusetts regulations and were, accordingly, not compensable under the law.

251.    Defendants, therefore, have been unjustly enriched by the retention of these benefits, and to allow Defendants to retain these amounts violates fundamental principles of justice, fairness, equity and good conscience.

252.    In these circumstances, the retention of the benefits unwittingly conferred on the Defendants by GEICO renders the Defendants retention of the benefits inequitable.

WHEREFORE GEICO respectfully requests this Honorable Court award:

a.    GEICO's Actual Damages;

b.    Costs, Interest and Attorney's Fees; and,

c.    Any additional relief this Court deems proper and just.

## COUNT XII
## INJUNCTIVE RELIEF

253.    GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

254.    There exists no liability insurance known to GEICO, which would be available to any of the Defendants to satisfy any judgment recovered by GEICO in this case.

255.    The only assets known to belong to the Defendants, which may be available to satisfy a judgment recovered by GEICO, are a certain parcel of real estate, bank accounts, and personal property located within Massachusetts and elsewhere.

256.    There exists a substantial danger that, if not enjoined, the Defendants will dissipate, convey and convert, or otherwise dispose of such assets, causing GEICO to suffer immediate and irreparable harm, incapable of remediation by final judgment at law or in equity.

257.    Should the injunctive relief requested in this case be granted, the Defendants will suffer no substantial harm, whereas such injunctive relief will merely preserve the status quo regarding assets standing in the names of the Defendants.

258.    The public policy interests concerning the enforcement of M.G.L. c. 93A, § 11, weigh in favor of the Court's granting the injunctive relief requested herein.

259.    GEICO requests that this Honorable Court enter a temporary restraining order and preliminary injunction enjoining the Defendants and their agents, representatives, successors, assigns, and anyone acting in concert with them and restraining them from conveying, hypothecating, secreting, transferring, selling, disposing of, encumbering, pledging, assigning, or in any other manner dealing with any and all property, both real and personal, wherever located, in which the Defendants have any interest, without prior approval of this Court.  GEICO further requests that all Defendants be enjoined from moving, destroying, or altering any invoices, documents, records, emails, computer files, bank statements, checks, financial records, or other materials relating to the business operations of the Defendants.

**WHEREFORE**, GEICO demands judgment against the Defendants in the form of a temporary restraining order and preliminary injunction.

## COUNT XIII
## REQUEST FOR DECLARATORY RELIEF

260.    GEICO repeats and realleges the allegations of all paragraphs above as if fully set forth herein.

261.    GEICO brings this Count for Declaratory Relief pursuant to Rule 57 of the Massachusetts Rules of Civil Procedure, and M.G.L. c. 231A, and M.G.L. c. 214.

262.    There exists an actual case in controversy between GEICO and the Defendants as to whether the medical bills sent to GEICO by Defendants represent reasonable charges for necessary care which is properly compensable under the M.G.L. c. 90, § 34M, and Standard Massachusetts Automobile Insurance Policy.

**WHEREFORE,** GEICO, respectfully requests that this Honorable court enter an Order declaring:

  a.   That the medical bills sent to GEICO by Defendants do not represent reasonable and necessary care which is properly compensable under M.G.L. c. 90, § 34M, and the Standard Massachusetts Automobile Insurance Policy; and,

  b.   That GEICO has no obligation to pay any monies in response to bills submitted in connection with the PIP claimants referenced in **Exhibit 16**, the Dorchester Chiropractic Damages Chart.

## VIII.   <u>JURY DEMAND</u>

GEICO DEMANDS TRIAL BY JURY ON ALL COUNTS IN THIS COMPLAINT.

Respectfully submitted,
For the Plaintiffs,
*GOVERNMENT EMPLOYEES INSURANCE*
*COMPANY, GEICO GENERAL INSURANCE*
*COMPANY, AND GEICO INDEMNITY*
*COMPANY*
By their attorneys,


David O. Brink, BBO #547370
dbrink@smithbrink.com
Douglas McInnis, BBO #672935
dmcinnis@smithbrink.com
Smith & Brink, P.C.
350 Granite Street Suite 2303
Braintree, MA 02184
Phone 617-770-2214
Fax 617-774-1714

Dated: March 6, 2013